**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS NICHOLAS SALZANO,<br>a/k/a "Nicholas Salzano" | No. 22cr690 (EP)<br><br>**AMENDED[1] MEMO ORDER<br>REGARDING MOTIONS IN<br>LIMINE** |

### Table of Contents

**I.    SALZANO'S MOTIONS IN LIMINE (D.E. 70)** ................................................................. **3**

A.    Salzano MIL I and II and Gov't MIL I: Bad Acts/Intrinsic/404(b) Evidence..................... 3

1.    Legal Standards................................................................................................................ 4

2.    Concealed History Evidence ........................................................................................... 6

3.    Fraudulent Financial Statements Evidence will be admitted........................................... 16

4.    Wife, Ex-Wife, and Mistress Payment Evidence ........................................................... 18

5.    The 2015 Tax Return evidence will be excluded at this juncture .................................... 21

B.    Salzano MIL III: Testimony from Thomas Carocci, Esq., regarding Ponzi schemes will
        not be barred ................................................................................................................... 22

C.    Salzano MIL IV(A) and (B): the Court will not bar the terms "Ponzi scheme" or "burner
        phone"............................................................................................................................. 24

D.    Salzano MIL IV(C): the Court will not bar evidence that NRIA employed a reputation
        management contractor..................................................................................................... 25

E.    Salzano MIL IV(D): the Government will be barred from introducing the specific names
        of Salzano's medical prescriptions................................................................................... 26

F.    Salzano MIL IV(E): the Court will not direct the Government to refer to Salzano only as
        "Thomas Nicholas Salzano" or "Nicholas Salzano" ....................................................... 26

G.    Salzano MIL IV(F): the Court will prohibit the Government from introducing calls from
        Essex County Correctional Facility, subject to further clarification and sanitization....... 26

H.    Salzano MIL IV(G): the Court will not prohibit the Government from introducing
        summary charts into evidence, subject to certain limitations ........................................... 28

I.    Salzano MIL V: the Court will not strike or redact Grabato from the Indictment............ 29

**II.    GOVERNMENT MOTIONS IN LIMINE (D.E. 71)**........................................................ **30**

---

[1] Correcting citation only.

A.   Gov't MIL II: the Court will not exclude evidence and claims that victims of the alleged schemes were negligent or failed to conduct adequate due diligence, but will permit appropriate cross-examination ........................................................................... 30

B.   Gov't MIL III: the Court will not exclude evidence and claims that Salzano's misrepresentations were immaterial based on disclaimers in PPMs or other documents. 31

C.   Gov't MIL X: the Court will permit hypothetical questions related to victims' reliance on Salzano's alleged misrepresentations ................................................................. 32

D.   Gov't MIL IV: the Court Will Exclude Evidence and Claims That Salzano Intended to Repay Victims ................................................................................................................. 33

E.   Gov't MIL V: the Court Will Permit An Advice-of-Counsel Defense Upon Compliance with the February 15, 2024 order (D.E. 79) ................................................................ 34

F.   Other Unopposed Motions ........................................................................................... 35

**III.  SUPPLEMENTAL GOVERNMENT MOTIONS IN LIMINE ......................................... 35**

A.   The Court Will Not Preclude David Gannaway From Testifying That NorVergence Had No Employees Following Its Bankruptcy ..................................................................... 35

B.   Tom Carocci Will Be Permitted to Testify Twice in the Government's Case-in-Chief and to Remain in the Courtroom During Others' Testimony ............................................. 36

C.   The Court directs the parties to adhere to Rule 613, but will otherwise defer any specific evidentiary ruling at this time ..................................................................................... 36

D.   The Court Denies as Premature the Government's Motion Regarding Self-Serving Hearsay Evidence ......................................................................................................... 37

E.   Salzano Has Waived Marital Privilege, and the Court Will Make the Appropriate Record ........................................................................................................................... 37

F.   The Court Will Not Preclude Salzano's Advice-of-Counsel Defense, Will Not Direct Salzano to Confirm Whether He Will Call Messrs. Von Paar and/or Harris, But Will Direct Salzano to Produce Any Related Documents as Soon as Practicable ................... 38

**IV.  ADDITIONAL MOTIONS ................................................................................................ 39**

**PADIN**, **District Judge.**

On October 12, 2022, following a two-year investigation, a Newark federal grand jury returned an 18-count Indictment charging Defendant Thomas Nicholas Salzano ("Salzano") with a scheme to defraud investors and with conspiring to defraud the Internal Revenue Service ("IRS") out of millions of dollars. Salzano was charged with securities fraud conspiracy in violation of 18 U.S.C. § 371 (Count 1); securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff and 17 C.F.R.

§§ 240.10b-5 (Count 2); wire fraud conspiracy in violation of 18 U.S.C. § 1349 (Count 3); wire

fraud in violation of 18 U.S.C. § 1343 (Counts 4 to 8); aggravated identity theft in violation of 18

U.S.C. § 1028A(a)(1) (Counts 9 and 10); conspiracy to defraud the United States in violation of

18 U.S.C. § 371 (Count 11); tax evasion in violation of 26 U.S.C. § 7201 (Counts 12 and 13); and

subscribing to false tax returns in violation of 26 U.S.C. § 7206(1) (Counts 14 to 18).[2]

The Government and Salzano have both filed motions in limine ("MILs") on several

overlapping issues.[3]  For the reasons and to the extent below, the MILs will be **GRANTED IN**

**PART** and **DENIED IN PART**.  Anywhere that the Court has indicated that evidence will be

admitted subject to an appropriate limiting instruction, or on any other issues where the parties feel

one is necessary, the parties shall confer and provide a joint limiting instruction.[4]

## I.     SALZANO'S MOTIONS IN LIMINE (D.E. 70)

### A.     Salzano MIL I and II and Gov't MIL I: Bad Acts/Intrinsic/404(b) Evidence

The Government seeks to admit three categories of evidence, alleging that the evidence

directly proves one or more of the charged offenses, is highly probative and has distinct non-

propensity purposes, and outweighs the potential for unfair prejudice, particularly if accompanied

by a limiting instruction.  Gov't MIL at 15-29.  Phrased differently, the Government argues that

the evidence is intrinsic to the fraud and tax crimes charged, can be admitted under Rule 404(b)

for non-propensity purposes, and is not unduly prejudicial.  Salzano, of course, argues the opposite.

---

[2] The Indictment also charged Salzano's alleged co-conspirator Rey E. Grabato ("Grabato"), who is a fugitive, in Counts 1 to 8 and 11.

[3] D.E. 70 ("Salzano MIL"); D.E. 71 ("Gov't MIL"); D.E. 73 ("Salzano Opp'n"); D.E. 74 ("Gov't Opp'n"); D.E. 75 ("Salzano Reply"); D.E. 76 ("Gov't Reply"); D.E. 80 ("Gov't Supp. MIL"); D.E. 81 ("Salzano Supp. Opp'n").

[4] Where the parties cannot agree on the instruction's text, the parties shall detail the dispute and their respective positions.

The first category, "Concealed History Evidence," relates to Salzano's past. According to the Government, Salzano defrauded consumers and investors by intentionally concealing material derogatory facts from his past. Specifically, the Government intends to introduce evidence of (i) National Telecommunications Inc.'s ("NTC") bankruptcy; (ii) the Federal Communications Commission's ("FCC") consent decree with Minimum Rate; (iii) NorVergence's bankruptcy; (iv) the Federal Trade Commission's ("FTC") charges filed against Mr. Salzano, and (v) Mr. Salzano's expunged guilty plea to theft by fraud in Louisiana. *Id.* It also includes efforts to scrub the internet of Salzano's past and concealing assets to avoid paying the IRS over $24 million representing NorVergence's unpaid payroll taxes. Gov't MIL at 4.

The second category is "Fraudulent Financial Statements Evidence." *Id.* This comprises evidence that in 2017, Salzano used fraudulent NRIA financial statements to apply for and obtain bank loans. *Id.* The Indictment alleges that in January 2019, Salzano used the same statements to induce investment in NRIA. *Id.*

And the third category is "Wife, Ex-Wife, and Mistress Payment Evidence." *Id.* The Indictment alleges that Salzano misappropriated NRIA investor funds by funneling money to his wife, ex-wife, and mistress. *Id.* To explain these payments, the Government intends to introduce evidence about Salzano's extramarital affair and, among other things, his use of the money to pay child support. *Id.*

### 1. Legal Standards

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." It may be used, in a criminal case, for another purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident." Rule 404(b)(2).  In ruling on the admissibility of evidence under Rule 404(b), the court should not assess the credibility or weight of the other act evidence but should only determine whether the jury could reasonably find the necessary facts by a preponderance of the evidence.  *See United States v. Bergrin*, 682 F.3d 261, 278-79 (3d Cir. 2012).

The Government argues that much of its proposed evidence need not be analyzed under Rule 404(b) because it is intrinsic evidence, *i.e.*, not "evidence of any crime, wrong or other act." Gov't MIL at 5-6.  In *United States v. Green,* 617 F.3d 233 (3d Cir. 2010), the Third Circuit noted that labeling evidence as intrinsic serves only to deprive the defendant of the procedural protections that accompany admission under Rule 404(b): notice from the prosecution and a limiting instruction from the court.  In determining whether the evidence was intrinsic to the charged offense, the Third Circuit rejected as unhelpful the "inextricably intertwined" test used in some other circuits.

Instead, the Circuit limited intrinsic evidence to two categories of evidence: 1) evidence that directly proves the charged offense and thus does not fall in the realm of "other crimes, wrongs, or acts" governed by Rule 404(b); and 2) uncharged acts performed contemporaneously with the charged crime provided the uncharged act facilitates the commission of the charged crime. The Circuit held that the threat evidence in *Green* was not intrinsic to the charged offense but was properly admissible as proof of motive under Rule 404(b) or as proof of bias.  *See also United States v. Bailey*, 840 F.3d 99 (3d Cir. 2016) (concluding that other act evidence was not intrinsic). "[W]here a criminal conspiracy is charged, courts have afforded the prosecution considerable leeway to present evidence, even of unalleged acts within the indictment period, that reflects a conspiratorial agreement or furtherance of the conspiracy's illegal objectives."  *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020).

5

Additionally, beyond Rule 404(b)'s specific limitations on the admission of prior bad acts, Federal Rule of Evidence 403 permits a court to exclude otherwise-relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As relevant here, "[e]vidence of other crimes or acts having a legitimate nonpropensity purpose," and thus unaffected by Rule 404(b), may nevertheless "contain the seeds of a forbidden propensity inference." *United States v. Bowie*, 232 F.3d 923, 931 (D.C. Cir. 2000). As a result, Rule 403's balancing of prejudice and probativeness may still bar the introduction of evidence, even if Rule 404(b) by itself would not. *Id.*

      2.    *Concealed History Evidence*

      a.    *National Telecommunications Bankruptcy and FCC Consent Decree*

The Government intends to introduce evidence that Salzano, before starting NRIA in 2006, controlled and ran National Telecommunications Inc. ("National"), a telemarketing company that resold telecommunications products, and its subsidiaries, including Minimum Rate Pricing, Inc. ("Minimum Rate"), all of which ultimately filed for bankruptcy in or around February 1999. Gov't MIL at 9. Salzano argues that this evidence is not intrinsic to the fraud charges because it "does not directly prove that Salzano used Grabato 'as a shadow chief executive officer,' and the omission of such to investors . . . [was] adequate, since [Salzano]" was "merely an independent advisor." Salzano MIL at 6. Salzano also argues that National's 1999 bankruptcy was "too far removed" from the Indictment's 2018 to 2022 allegations.

The Government also seeks to introduce evidence that in 1998 (before National went bankrupt), Minimum Rate entered into an FCC consent decree, signed by Salzano, for engaging in a deceptive telemarketing practice known as "slamming"—switching a consumer's landline phone

service without permission.  Gov't MIL at 9, Ex. A ("FCC Decree").  Minimum Rate did not admit to wrongdoing, and agreed to pay a fine of $1.2 million and to remedial measures.  *Id.*  Like before, Salzano argues that this evidence is not intrinsic to the Indictment's fraud charges, and that it will necessitate a "mini-trial" to determine Salzano's role with Minimum Rate and the FCC Decree. Salzano MIL at 7.

As an initial matter, the Government does not intend to argue or present evidence that Salzano was the direct cause of the bankruptcy—only that he ran the company, it went into bankruptcy, he agreed on the company's behalf to pay a $1.2 million fine for engaging in deceptive telemarketing practices as part of the consent decree, and worked to conceal this information from NRIA investors. Thus, there will be no need for a mini trial.

   *b.*  *NorVergence*

After Minimum Rate's bankruptcy, from 2002 to 2004, Salzano was the Chief Managing Officer of NorVergence, a large telecommunications company.  Gov't MIL at 10.  The Government expects to call multiple witnesses who worked with Salzano at NorVergence who will testify that Salzano ran NorVergence' day-to-day operations, including payroll.  *Id.*  The witnesses are expected to testify that Salzano was not an owner of NorVergence because Salzano did not want potential NorVergence customers or investors to know about his past at Minimum Rate.

On June 30, 2004, three of NorVergence's creditors filed an involuntary bankruptcy petition against NorVergence in this District seeking relief under chapter 11 of the Bankruptcy Code.  *Id.* On July 14, 2004, the Bankruptcy Court converted the chapter 11 case to a Chapter 7 liquidation proceeding.

As before, Salzano argues that this evidence is not intrinsic because it "does not directly prove that Salzano used Grabato 'as a shadow [CEO],'" and that disclosures in the private

7

placement memoranda were adequate under advisement by counsel." Salzano MIL at 8, Ex. B at 2-3. Salzano argues that he did not own, invest in, or receive any benefits from NorVergence, and that the bankruptcy allegations are too far removed from the Indictment's allegations. *Id.* Finally, Salzano also argues that the NorVergence bankruptcy is not intrinsic to the tax charges because it does not prove that he sought to evade any taxes or that he was involved with NorVergence payroll. *Id.*

        c.    *FTC Charges*

In 2006, the Federal Trade Commission ("FTC") filed a complaint in this District against, and simultaneously settled with, Salzano for his role in defrauding small businesses, nonprofit organizations, churches, and municipalities through false and misleading claims by NorVergence of dramatic savings on their monthly telephone, cellular, and internet bills. *Id.* Without admitting to the FTC's allegations, Salzano stipulated to an order barring him from engaging in deceptive conduct, requiring him to make certain disclosures in future telecommunications product pitches, and ordering him to pay $50 million in restitution to defrauded customers, which was subsequently suspended due to his inability to pay. Gov't MIL, Ex. B.

        d.    *IRS Penalty*

On or about November 19, 2007, the IRS assessed a Trust Fund Recover Penalty ("TFRP") against Salzano of $24,543,233.34 as a responsible person for NorVergence for NorVergence's failure to pay payroll taxes for the first, third, and fourth quarters of 2004. *Id.* at 11. The Government alleges that over the years, Salzano hid assets and repeatedly took other steps to avoid paying all or part of the TFRP. Thus, Indictment Count 11 charges conspiracy to defraud the IRS and Count 12 charges tax evasion.

e.     *Louisiana conviction ("LA Conviction")*

On or about September 6, 2013, Salzano pleaded guilty in Louisiana state court to five felony counts of theft by fraud, in violation of Louisiana Revised Statute § 14:67(B)(1).  Gov't Mot. at 11-12, Ex. C.  His guilty plea stemmed from defrauding small businesses in Louisiana through NorVergence by falsely promising consumers that they would receive cost savings on telecommunications services.  *Id.*  In or around December 2018, Salzano successfully moved in Louisiana State Court for his prior fraud convictions to be expunged.  *Id.* at 12, Ex. D.

f.     *Biography misrepresentation*

The Government alleges that Salzano misrepresented his biography to NRIA investors. That biography, which appeared in every private placement memorandum ("PPM") sent to investors prior to his arrest, allegedly failed to include any details about his history of fraud at NorVergence, his enormous tax liabilities stemming from his work at NorVergence, and his misconduct while at Minimum Rate.  *Id.*  at 13.  Multiple witnesses will testify at trial that Salzano told them that he dropped his first name, Thomas, and used his middle name, Nicholas, to avoid NRIA investors from finding out about his past at NorVergence.  *Id.*  The evidence will also show that Salzano misappropriated approximately $956,000 of NRIA investor money to an Indian technology company, FATbit, to plant false articles about NorVergence and his name on the Internet so that investors would not find the true information about his past—the criminal charges, the settlements, and the bankruptcies.  *Id.*, Ex. E.

g.     *The Fraudulent Concealment Evidence will be admitted as intrinsic because it directly proves a charged offense*[5]

---

[5] To the extent that Salzano has agreed to stipulate to certain facts—for example, that NorVergence failed, that does not preclude the Government from introducing, within reason, other related evidence.  *See Old Chief v. United States*, 519 U.S. 172, 186 (1997) ("In sum, the accepted rule

The Government argues that the Fraudulent Concealment Evidence is intrinsic, and therefore admissible without reference to Rule 404, because it directly proves the charged conspiracies. First, the Government argues that the evidence directly proves the fraud conspiracies charged in Counts 1 (securities fraud conspiracy) and 3 (wire fraud conspiracies) and the substantive fraud counts charged in Count 2 (securities fraud) and Counts 4 to 8 (wire fraud). *Id.* at 14.

The Government is correct that, to prove these charges, the Government must show that Salzano made or caused to be made false or misleading statements to NRIA investors. *See* 3rd Circuit Model Jury Instructions § 6.18.1343 (first element of wire fraud requires the Government to prove a defendant devised a scheme to defraud or obtain money or property by "materially false or fraudulent pretenses, representations, or promises"); 3 Modern Federal Jury Instructions-Criminal P 57.03 at 57-21 (Government can prove first element of classic fraud by providing, beyond a reasonable doubt, that, in connection with the purchase or sale of stock, the defendant "made an untrue statement of material fact, or omitted to state a material fact that made what was said, under the circumstances, misleading" and instructing jurors that "[w]ith regard to the alleged misrepresentations (and omissions), you must determine whether the statement was true or false when it was made, (and, in the case of alleged omissions, whether the omission was misleading)").

The Government's theory, distilled, is this: Salzano had an obligation to share with NRIA investors all information material to their decision to invest, including but not limited to his own history as an executive. Instead, he allegedly concealed material information that may, if known, have dissuaded those investors. The evidence is thus intrinsic because it relates to

---

that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense.").

contemporaneous acts (failure to disclose) that the Indictment alleges furthered the conspiracy (misleading/defrauding investors).  For instance, the evidence, at least according to the Government's interpretation, explains why Salzano stopped using his first name at NRIA, why Salzano asked Arthur Scuttaro and his son to change their last name to "Scutaro," acts Salzano took as part of the charged conspiracy to disassociate from his history to deceive NRIA Fund investors and prospective investors, and why Salzano misappropriated nearly $1 million dollars of NRIA investor money to pay for FATbit to cleanse the internet of any past misdeeds in order to continue at NRIA.

Salzano's objections fall into several categories.  As the Government argues, however, the objections are unavailing because they strike at the weight of the evidence, not its admissibility.

First, Salzano argues that he had no personal involvement in the alleged prior acts.  For example, Salzano argues that Minimum Rate entered into the MR decree and agreed to sanctions, not him.  Salzano Opp'n at 5.  Similarly, he argues that he "did not own, invest in, nor receive any benefits from NorVergence."  Salzano Opp'n at 7.

Second, he argues that the MR decree and FTC Settlement did not constitute an admission of liability.  Salzano Opp'n at 5, 7.

Third, he argues that the LA Conviction cannot be considered because the charges were dismissed, which functions as an acquittal, and the charges expunged.  Salzano Opp'n at 5-6 (citing Gov't MIL, Exs. C, D).

Fourth, he argues that the FTC charges, FCC Decree, and National bankruptcy are too remote in time to be considered.  *See* Salzano MIL at 6, 7, 8.

As the Government argues, these arguments challenge the evidence's weight, not its admissibility.  "The Government must be given latitude to try to prove the existence of a scheme

and to show that [Salzano] knowingly and willfully conducted it." *United States v. Blair*, No. ELH-19-00410, 2021 U.S. Dist. LEXIS 182171, at *85 (D. Md. Sep. 23, 2021) (citing *United States v. Bajoghli*, 785 F.3d 957, 964 (4th Cir. 2015) (because evidence of conduct not charged in a specific scheme's execution may be relevant to the nature and scope of a scheme, such evidence is intrinsic and not subject to Rule 404(b)).  Evidence of prior investigations, bankruptcies, and financial predicaments are admissible because they are intrinsic to the offenses alleged.  *United States v. Bard*, No. 1:12-CR-181, 2013 U.S. Dist. LEXIS 86728, at *5-6 (M.D. Pa. June 20, 2013) (permitting as intrinsic evidence of FINRA investigation, bankruptcy petition, and past financial straits where defendant was charged with a scheme to represent himself as an experienced and trustworthy financial advisor, while choosing to withhold information regarding his personal bankruptcy and a FINRA investigation into his prior misconduct); *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) (evidence of prior identity theft and fraud admissible as "intrinsic" to charged offenses of fraud, identity theft, and murder, and reversing district court's pretrial ruling to the contrary); *United States v. Janati*, 374 F.3d 263, 275 (4th Cir. 2004) ("[T]he government has the right and the burden to prove in its case-in-chief a conspiracy broader than the individual overt acts alleged [and] therefore the district court must give the government a reasonable opportunity to carry this burden"); *see also United States v. Kelley*, 981 F.2d 1464, 1472-1473 (5th Cir. 1993) (affirming admission of expunged conviction because Rule 404(b) admission is "not limited to convictions, but also includes other 'wrongs' or 'acts'").

Likewise, the evidence of Salzano's history at NorVergence is also directly relevant and intrinsic to the tax conspiracy charged in Count 11, 18 U.S.C. § 371, and the evasion of payment count charged in Count 12, 26 U.S.C. § 7201.  These charges stem in part from Salzano's alleged years-long scheme to evade paying the $24,543,233.34 TFRP the IRS assessed against him.

Similarly, to prove the evasion of payment charged in Count 12, the Government must show that Salzano had a substantial tax deficiency arising from the TFRP.  See 3rd Circuit Model Jury Instructions, § 6.26.7201 (2021).  Accordingly, the Fraudulent Concealment Evidence may be admitted as intrinsic.

Finally, Salzano argues that he may introduce an advice-of-counsel defense; presumably, that counsel advised that disclosure to NRIA investors was unnecessary.  This was the subject of a prior order.  D.E. 79.  Should Salzano choose to utilize the defense, and if this Court permits it upon a demonstration of compliance with the Court's order, this argument nevertheless impacts the evidence's weight, not its admissibility.  Specifically, the evidence aims to challenge intent/mens rea.

> h.   The Fraudulent Concealment Evidence will be admitted under Rule 404(b) for non-propensity purposes

To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it. *Green*, 617 F.3d t 249.  Rule 404(b) evidence may be admitted for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *United States v. Daraio*, 445 F.3d 253, 263 (3d Cir. 2006).

 The party seeking to admit Rule 404(b) evidence bears the burden of demonstrating its applicability.  *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014).  The Third Circuit "favor[s] admission of Rule 404(b) evidence when it is relevant for any other purpose than to show the defendant's propensity to commit the charged offense."  *Daraio*, 445 F.3d at 263 (also noting that repeated limiting instructions emphasizing limited purpose for Rule 404(b) evidence prevented unfair prejudice).

13

First, "[a] proper purpose is one that is 'probative of a material issue other than character.'" *Id.* (quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988)). "The evidence must fit into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *Green*, 617 F.3d at 249. "[O]ne proper purpose under Rule 404(b) is supplying helpful background information to the finder of fact." *Id.*

In other fraud cases, courts have admitted a defendant's prior uncharged conduct. *United States v. Jemal*, 26 F.3d 1267, 1276 (3d Cir. 1994) (finding prior insurance fraud scheme "highly relevant" to knowing and intentional involvement in charged mail fraud scheme); *United States v. Peperno*, No. 3:CR-21-287, 2022 U.S. Dist. LEXIS 110057, at *18 (M.D. Pa. June 21, 2022) (evidence regarding prior conviction and restitution obligation "highly probative of the money laundering charges" because a jury could infer that he sought to conceal proceeds and cash to avoid restitution obligation).

Here, as the Government argues, the Fraudulent Concealment Evidence has multiple relevant, non-propensity purposes including Salzano's motive, intent, knowledge, plan, identity, and absence of mistake with respect to hiding his true role at NRIA from investors, changing his name, asking the Scuttaros to change their names, facilitating payments to FATbit to obscure his past fraudulent conduct, explain his relationship with his alleged co-conspirators, including Arthur Scuttaro, who worked with Salzano at both Minimum Rate and NorVergence. Gov't MIL at 18.

Likewise, the NorVergence-specific evidence directly proves the tax conspiracy charged in Count 11, 18 U.S.C. § 371, and the evasion of payment count charged in Count 12, 26 U.S.C. § 7201, because it will allegedly show that Salzano exercised authority and control at NorVergence, which is directly relevant to proving he was liable for the $24,543,233.34 TFRP assessed against

14

him by the IRS.  Thus, this evidence will squarely assist the jury to decide Salzano's criminal liability as to the tax conspiracy counts.

Nor is there any indication that the evidence fails to comply with Rule 403, which requires exclusion where the danger of unfair prejudice "substantially outweighs" the probative value.  Of course, "[a]ny evidence suggesting guilt is 'prejudicial' to a defendant and obviously Rule 403 is not intended to exclude all such matter."  *United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992).  However, "the focus must be on unfairness in the sense that the proponent would secure an advantage that results from the likelihood the evidence would persuade by illegitimate means." *Id.*

Though of course there is some concern regarding prejudice for the introduction of uncharged or expunged acts, the Court does not find that this outweighs the probative value of the evidence.  For the reasons discussed above, the Fraudulent Concealment Evidence is highly probative.  Additionally, the prejudice will be minimized because the Government has indicated that its evidence will comprise:[6] (1) Salzano's September 2013 Guilty Plea transcript and the two settlement orders he entered into with the FCC and the FTC; (2) select testimony from multiple witnesses about Salzano's role at NorVergence and Minimum Rate; and (3) discreet testimony and evidence showing that both Minimum Rate and NorVergence filed for bankruptcy.  Gov't MIL at 24.

Finally, any prejudice will be minimized by an appropriate limiting instruction.  Salzano and the Government shall collaborate on an appropriate instruction to be read after the introduction of such evidence and during the closing charges.

---

[6] The Government indicates that its presentation "will principally include" this evidence.  Gov't MIL at 24.  To the extent that the Government seeks to venture outside of this evidence, Salzano may renew his objection.

3.      *Fraudulent Financial Statements Evidence will be admitted*

The Government has noticed its intent to introduce evidence that "Salzano initially created the [January 29, 2019] fraudulent financial statements in or around May 2017 and sent them to Grabato to use in an application for a small business administration loan from First Home Bank for $150,000. In or around 2019, NRIA paid off the loan." *See* Salzano MIL at 12, Ex. B at 3.

These fraudulent statements featured, among things, the letterhead and electronic signature of Grabato's former accountant, Philip DeFalco.  Gov't MIL at 25.  But according to the Government, DeFalco did not prepare those statements or authorize the use of his letterhead and signature on them.  *Id.*  The Indictment explicitly alleges that Salzano used those fraudulent financial statements as part of the manner and means of the conspiracy to commit securities fraud (Count 1, ¶ 4(u)-(v)), substantive securities fraud (Count 2), wire fraud conspiracy (Count 3), the substantive wire fraud charges (Counts 4 to 9), and one of the two aggravated identity theft charges (Count 10).

The Government also seeks to introduce two additional items: (1) that in or around May 2017, Salzano sent Grabato and others versions of the same fraudulent financial statements for Grabato to use in an application for a $150,000 small business administration loan from First Home Bank.  Gov't MIL at 25 (citing Ex. G (GX 110)); and (2) Emails and text messages showing that Salzano, Grabato, and two of Salzano's relatives were involved in creating and sending the same fraudulent financial statements to Coley O'Brien ("O'Brien"), the chief investment officer of NRIA, for purposes of obtaining a different loan from Genesis Capital, LLC ("Genesis Capital") for one of NRIA's real estate projects.  *Id.*

The Government alleges that this evidence is relevant and intrinsic to the Aggravated Identity Theft offense charged in Count 10, because it directly links Salzano to the same documents

he is alleged to have used on or about January 29, 2019 when stealing and misusing DeFalco's identity.  The Government argues that it is also intrinsic to the securities fraud conspiracy charged in Count 1, which alleges that Salzano used the fraudulent statements to defraud investors.  In the alternative, the Government argues that it is admissible under Rule 404(b) for proper non-propensity purposes because it shows "Salzano's opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident with respect to the fraudulent financial statements and reports he sent to Fund investors as part of the charged fraud scheme—the same fraudulent financial statements and reports he created in May 2017."  *Id.* at 26.

The Court finds that this evidence is both intrinsic to the charges and admissible under Rule 404(b).  First, even Salzano acknowledges that the records are "likely intrinsic to many Counts . . . in the Indictment."  Salzano MIL at 12.[7]  But beyond that, the Government is correct that Salzano highlights the evidence's relevance and non-propensity purpose under Rule 404(b): that Salzano intends to argue that "[a]ny records pertaining to fraudulent financial statements created in or around May 2017 . . . points directly to Grabato."  *Id.*; *see United States v. Gorko*, 169 F. App'x 745, 749 (3d Cir. 2006) (unpublished) (affirming admission of uncharged, threatening letter to establish that it was authored by the same person that authored indicted threatening letter)

Salzano's MIL similarly challenges, pursuant to Rule 403, the Government's introduction of evidence "related to fraudulent documents and information Salzano submitted and caused to be submitted to lenders on its real estate projects."  Salzano MIL at 13.  The evidence appears probative; as the Government argues, the evidence "is directly relevant and intrinsic because it shows that Salzano personally orchestrated straw purchases and created and caused to be provided

---

[7] Salzano explains that they are uncharged, but does not explain why that precludes admission. Salzano MIL at 12.  The fact that they are uncharged is what necessitates this analysis.

sham paperwork for the purpose of defrauding its construction lenders as part of the overarching securities fraud scheme charged in the Indictment [and] pattern of using certain individuals . . . for purposes of facilitating the fraud scheme, tax conspiracy, and tax evasion." Salzano MIL, Ex B at 4. Conversely, Salzano's allegation that this evidence will be prejudicial is conclusory. Accordingly, the Government may seek admission of the evidence.

<ol start="4" type="1">
<li><em>Wife, Ex-Wife, and Mistress Payment Evidence</em></li>
</ol>

The Government intends to introduce evidence that Salzano misappropriated NRIA investor money through shell companies and nominees to pay, among others, his wife (Olea Budinska), his ex-wife (Jamie Samul), and his mistress (Yulia Krutoy). Salzano used shell companies and nominees to pay these individuals in furtherance of a scheme to misappropriate money from NRIA investors, and to evade the IRS, to whom, as Salzano well knew, he owed tens of millions of dollars. To that end, the Government intends to introduce evidence that Salzano had an extramarital affair with Krutoy while married to Budinska. Additionally, the Government intends to admit evidence that Salzano was divorced from and owed substantial child supports to Samul, which he was sometimes delinquent in paying. The evidence at trial will show that the money Salzano sent to Krutoy and Samul was intended to pay his mistress and child support obligations to each, respectively.

Salzano seeks to limit: (1) evidence of Olena Budinska's social media posts; (2) evidence of Mr. Salzano's child support obligations; and (iii) the term "mistress" in reference to Mr. Salzano's girlfriend, Yulia Krutoy. Salzano MIL at 14. Salzano argues that Rule 403 bars the evidence as "outweighed by the real danger of unfair prejudice, as well as by considerations of undue delay, waste of time, needless presentation of cumulative evidence, and is substantially likely to mislead a jury." *Id.*

a.    *The Court will not exclude Budinska's Instagram posts*

Salzano argues that the Court should prohibit evidence of his wife Olena Budinska's social media (Instagram) posts as unduly prejudicial, arguing that the posts, particularly those in which she is wearing revealing swimwear, "are likely to provoke an emotional response amongst the jury, and confuse the jury with respect to the underlying issues within the case." Salzano MIL at 14. The Government responds that Budinska's entire Instagram account was marked for the sake of completeness, but that it does not intend to admit every post. Gov't Opp'n at 17.

The Court agrees that the photos, subject to certain limitations to limit cumulative evidence and private[8] photos, are probative and not unfairly prejudicial. "Admission of lifestyle evidence carries a danger of appealing to class resentments, and so requires the weighing of probativeness against prejudice." *United States v. Lattanzio*, No. 15-446, 2018 U.S. Dist. LEXIS 65762, at \*39-40 (D.N.J. Apr. 16, 2018). However, courts routinely admit similar extravagant expenditure evidence. Courts have routinely found evidence of extravagant expenditures admissible as proof of motive. *United States v. Lattanzio*, No. 15-446, 2018 U.S. Dist. LEXIS 65762, at \*43-44 (D.N.J. Apr. 16, 2018) (Court "considered the nature, as well as the amount, of the expenditures. While the dollar amounts were high, nothing about the items purchased was inflammatory, prejudicial, or suggestive of bad acts extrinsic to the charged offenses.") (citing *United States v. Hoey*, No. 16-2738-CR, 725 Fed. App'x. 58, 2018 U.S. App. LEXIS 6003, at \*2 (2d Cir. Mar. 8, 2018) (in case of wire fraud and embezzlement from pension fund, upholding ruling that "while evidence of defendant's lavish spending habits would be allowed, evidence of his spending on illegal activities (e.g., drugs and prostitutes) would be barred.")). "The real issue is whether the relevance of motive

---

[8] The Court excludes, for example, any photos of children that do not obscure or blur the childrens' faces and/or other identifying information.

is outweighed by unfair prejudice as contemplated by Fed. R. Evid. 403 and the due process clause of the Fifth Amendment." *United States v. Jackson- Randolph*, 282 F.3d 369, 378 (6th Cir. 2002).

Here, the evidence is relevant to Count 1 (conspiracy), Count 7 (wire fraud), and Count 11 (tax conspiracy); specifically, to prove the allegation that, shortly after the IRS levied Salzano's wages to collect tens of millions of dollars in unpaid taxes, Salzano directed Grabato to use Fund investor money to pay Budinska a salary of between $3,000 to $7,000 per week for a no-show job, totaling $1.3 million, almost all of which was traceable to investors. Gov't Opp'n at 17. Additionally, Budinska was hired to promote NRIA on social media. For that role, she received a salary of $300,000 per year, but allegedly failed to promote NRIA on her social media. *See* Gov't Opp'n at 18, Ex. F.

As to the specific photos of a bikini-clad Budinska, the Government argues that they are relevant because Salzano held weekend-long birthday parties—which he called Summer Jam—at the Ocean Place Spa and Resort in New Jersey; he directed that the parties be paid for with Fund investor money; and he subsequently directed NRIA personnel to falsely book them as legitimate marketing expenses. Gov't Opp'n at 19. Budinska attended Summer Jam, captured a picture of herself in a bikini lounging on a beach chair, and posted it to Instagram on August 12, 2019, while Summer Jam was occurring. *Id.*, Ex. E. Though Salzano argues that other evidence, like receipts, is available to prove the same point, the question is only whether the evidence, under Rule 403, is more prejudicial than probative. Here, it is not, and therefore will not be excluded.[9]

---

[9] To the extent that the Government seeks to introduce similar photos that do *not* have a similar, identifiable basis for relevance, or to the extent that the exhibits are unnecessarily cumulative, Salzano may renew this objection.

      *b.*     *The Court will not exclude evidence of child support obligations*

Salzano seeks to bar the introduction of evidence of his child support obligations to Samul. Salzano MIL at 14-15.  The Government responds that evidence that Salzano was divorced from and owed substantial child supports to Samul, named Individual-7 in the Indictment, is necessary to provide a motive for misappropriating investor money.  Gov't Opp'n at 20.  Such evidence may be admitted, and is not unduly prejudicial.  *Jeter v. Spinnaker Ins. Co.*, No. 3:22 CV 1187, 2024 U.S. Dist. LEXIS 16553, at *24 (N.D. Ohio Jan. 31, 2024) (admitting overdue child support for financial motive); *Hamilton v. Wills*, No. 15 C 7592, 2023 U.S. Dist. LEXIS 106155, at *13 (N.D. Ill. June 20, 2023) (evidence of defendant's "gripes over child support and visitation established his motive to harm [victim]").  The Court will provide an appropriate limiting instruction.

      *c.*     *The Court will not exclude the term "mistress"*

Salzano seeks to prohibit the Government from using the term "mistress" with respect to Yulia Krutoy under Rule 403, arguing the danger of unfair prejudice.  Salzano MIL at 15.  Salzano provides no support for this argument.  Conversely, the Government explains that identifying Krutoy's precise role is relevant to the charges because Krutoy will testify that Salzano frequently gave her money, and then purchased a penthouse after she discovered during their relationship that he was married.  *See* Gov't Opp'n at 21-22; *United States v. Bonner*, No. 12CR3429, 2014 U.S. Dist. LEXIS 11852, at *7 (S.D. Cal. Jan. 30, 2014) (denying motion to strike extramarital affair from indictment because it was relevant to fraud charges).  Even if unsavory, it is a useful shorthand; indeed, the term may prove *less* prejudicial than "girlfriend," which might prompt frequent Government clarifications that Krutoy was Salzano's girlfriend *while* he was married.  Moreover, any prejudice can be cured with an appropriate limiting instruction.

      *5.*     *The 2015 Tax Return evidence will be excluded at this juncture*

The Government intends to admit evidence that Salzano knowingly failed to report certain income in his 2015 filing."  See Salzano MIL, Ex. B at 5.  Salzano seeks to bar this evidence pursuant to Rule 403.  Salzano MIL at 15.  Salzano does not explain why the evidence is more prejudicial than probative.

Nor, however, does the Government expand its argument.  The Government argues that the evidence, which includes evidence of lease payments from an NRIA bank account for one of Salzano's luxury vehicles, is relevant to Count 11, which charges a conspiracy to defraud the IRS, and Count 13, which charges evasion of income taxes for 2016 through 2020.  Gov't Opp'n at 22.  The Government argues, in a conclusory fashion, that the evidence of uncharged 2015 tax evasion will prove the charged 2016-2020 conspiracy for tax evasion and fraud, as well as willfulness, but does not explain how.  Accordingly, this evidence will be excluded, subject to the Government's renewed application accompanied by an appropriate evidentiary showing.

**B.      Salzano MIL III: Testimony from Thomas Carocci, Esq., regarding Ponzi schemes will not be barred**

Salzano asks the Court to prohibit the Government from introducing testimony from Government expert Thomas Carocci, Esquire, an Assistant General Counsel of the Criminal Prosecution Assistance Group ("CPAG") at the Financial Industry Regulatory Authority ("FINRA"), regarding the "common features of Ponzi schemes."  Salzano MIL at 17.  Carocci is certified by the FINRA Institute at the Wharton School of Business, University of Pennsylvania, as a regulatory and compliance professional, and obtained a degree from the FINRA Examiner University in May 2008.  Gov't Opp'n at 23.

At trial, Carocci will "explain the nature and structure of the securities markets and provide the jury with background information akin to 'Investment and Securities 101' in which he will

explain concepts and terminology related to the investments and securities in this case." *Id.* at 24. He will also "educate the jury about Ponzi schemes and common 'red flags.'" *Id.*

"As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is sufficiently tied to the facts of the case, so that it "fits" the dispute and will assist the trier of fact. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020); Fed. R. Evid. 702. Rule 704(b) provides that:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

"[E]xpert testimony is admissible if it merely supports an inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." *United States v. Bennett*, 161 F.3d 171, 183 (3d Cir. 1998) (cleaned up). "'It is only as to the last step in the inferential process—a conclusion as to the defendant's mental state—that Rule 704(b) commands the expert to be silent.'" "It is only as to the last step in the inferential process--a conclusion as to the defendant's mental state--that Rule 704(b) commands the expert to be silent." *United States v. Watson*, 260 F.3d 301, 309 (3d Cir. 2001) (quoting *United States v. Dunn*, 846 F.2d 761, 762 (D.C. Cir. 1988) (expert violated Rule 704(b) when he testified that defendant possessed drugs with the intent to distribute them).

Here, as the Government argues, Carocci's anticipated testimony about Ponzi schemes is relevant to understanding why these schemes are fraudulent, and to help explain Salzano's motive

for hiding and lying to investors about NRIA's cash flow. *See Hafen v. Howell*, No. 2:19-cv-00813, 2023 U.S. Dist. LEXIS 31113, at *4-5 (D. Utah Feb. 23, 2023) (collecting cases in which courts admitted expert testimony "to help jurors assess whether an investment scheme was a Ponzi scheme, reasoning such testimony can be relevant and helpful to the trier of fact on this issue").

Additionally, as the Government argues, there is no indication that Carocci's testimony will violate Rule 704(b), to the extent that he does not testify about Salzano's mental state. *See United States v. Basroon*, 38 F. App'x 772, 776 (3d Cir. 2002) (testimony that a Ponzi scheme is a scheme to defraud investors, and that operation was "consistent with" the operation of a Ponzi scheme, was not an "opinion or inference" as to mental state or intent). Here, the Government has indicated that it will not elicit testimony from Carocci that Salzano's conduct is "per se fraudulent," or about Salzano's mental state. Gov't Opp'n at 30. To the extent that the Government complies with that representation, or does not otherwise violate any evidentiary rule, the Court will permit the testimony.

## C. Salzano MIL IV(A) and (B): the Court will not bar the terms "Ponzi scheme" or "burner phone"

Salzano asks the Court to bar the term "Ponzi" scheme as unfairly prejudicial, which includes a request to strike it from the Indictment. Salzano MIL at 18. However, "there is no rule of evidence or ethics that forbids the prosecutor from referring to the crime by its common name when examining a witness." *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (collecting cases); *United States v. Sencan*, No. 13-0117, 2013 U.S. Dist. LEXIS 173655, at *5-6 (S.D. Ala. Dec. 11, 2013) ("'Ponzi scheme' . . . is a fair description of the alleged conduct underlying the specific offenses that defendants are charged with committing and that the Government hopes to prove at trial.").

As to the term "burner phone," Salzano has not cited any decision excluding the term as unfairly prejudicial. *See United States v. Porter*, No. 13-66, 2016 U.S. Dist. LEXIS 23128, at *8-9 (E.D. La. Feb. 25, 2016) (collecting cases permitting the term as unobjectionable slang). It can however, be probative. *See United States v. Alston*, No. S3 15 CR 435, 2016 U.S. Dist. LEXIS 136119, at *25 (S.D.N.Y. Sep. 27, 2016). Here, the Government seeks to introduce evidence that Salzano provided cash to an employee and directed the employee to purchase cheap, prepaid cell phones from Walmart, which were distributed to Salzano's inner circle. There is no basis to exclude that evidence, or the term the witnesses will likely use to describe the phones. Additionally, an appropriate limiting instruction will be provided.

**D.      Salzano MIL IV(C): the Court will not bar evidence that NRIA employed a reputation management contractor**

Salzano seeks to bar the Government from introducing evidence "related to NRIA's engagement with a "Reputation Management" company. Salzano MIL at 20, Ex. A at 79-84. Salzano argues that this evidence is minimally probative because "reputation management" services are regularly utilized by corporations, and that such evidence would be unfairly prejudicial. *Id.* at 21. Salzano's arguments also dovetail with his prior intrinsic/Rule 404(b) evidence, *i.e.*, that this evidence relates to uncharged conduct. *Id.* Salzano also points to a "right to be forgotten" online available in Europe. *Id.*

The Government responds that it intends to prove its allegations "by showing, among other things, that Salzano paid and directed FATbit to plant false articles about Salzano and NorVergence on the Internet so that investors would not find accurate, negative information about his past if they Googled him." Gov't Opp'n at 34-35. This is sufficiently probative to deny Salzano's motion. The Government also notes, and the Court agrees, that the "right to be

25

forgotten" available in Europe has not been established in the United States. *Id.* Accordingly, the evidence will be permitted.

### E.    Salzano MIL IV(D): the Government will be barred from introducing the specific names of Salzano's medical prescriptions

Salzano asks the Court to bar the Government from mentioning the names of Salzano's medical prescriptions. Salzano MIL at 21. The Government responds that unsanitized evidence regarding the medication is necessary to prove that Salzano misappropriated investor money for a non-serious, non-life threatening condition. Gov't Opp'n at 36. The names of the medications will be excluded as insufficiently probative and unfairly prejudicial, but the Government may introduce evidence that NRIA/investor funds were used to purchase the medication. *See United States v. Laljie*, 184 F.3d 180, 193 (2d Cir. 1999) (affirming exclusion of evidence regarding similar condition ,"an embarrassing subject of tangential relevance," where testimony existed regarding the primary issue, an alleged affair).

### F.    Salzano MIL IV(E): the Court will not direct the Government to refer to Salzano only as "Thomas Nicholas Salzano" or "Nicholas Salzano"

Salzano seeks to limit how the Government refers to him, arguing that the jury might be confused. Salzano MIL at 22. The Government indicates an intention to refer to Salzano only as "Thomas Nicholas Salzano," which renders the motion moot. Gov't Opp'n at 37. However, the Government also seeks to preserve its right to admit evidence that Salzano changed his name to conceal his past from NRIA investors and prospective investors. *Id.* Because this evidence is probative of the charges and not unfairly prejudicial or confusing, the Court will permit it.

### G.    Salzano MIL IV(F): the Court will prohibit the Government from introducing calls from Essex County Correctional Facility, subject to further clarification and sanitization

26

Salzano seeks to prohibit the Government from introducing evidence related to calls made while Salzano was detained at Essex County Correctional Facility.  Salzano MIL at 22-23.  The Government responds that the three jail calls contain Salzano's "self-serving statements, knowing that he is being recorded," which will not be a "constant reminder to the jury" of Salzano's prior incarceration.  Gov't Opp'n at 37-38.

In determining whether such evidence was prejudicial, the Court considers three factors: (1) whether the testimony was "pronounced and persistent, creating a likelihood [it] would mislead and prejudice the jury, (2) the strength of the other evidence, and (3) curative action taken by [the Court]."  *United States v. Xavier*, 2 F.3d 1281, 1285 (3d Cir. 1993).  Courts within the Third Circuit have generally declined to hold that indicia of a defendant's incarceration are unduly prejudicial where the indicia fall short of being "constant reminder[s] to the jury over the course of trial that the defendant is a prisoner."  *U.S. v. Faulk*, 53 F. App'x 644, 647-48 (3d Cir. 2002); *see also United States v. Elysee*, 993 F.3d 1309, 1346 (11th Cir. 2021) (affirming conviction based on jail call in which defendant jokes about how, prior to his arrest, he had never been caught with a firearm because "he would have no reason to brag about never being caught" if he did not know he was not supposed to have a firearm); *United States v. Johnson*, No. 14-cr-00412, 2015 U.S. Dist. LEXIS 57045, at *14 (N.D. Cal. Apr. 30, 2015) ("As to the possession count, the allegedly obstructive conduct documented in the phone calls provides evidence of Defendant's consciousness of guilt, which courts have consistently found to be highly probative.").

At this juncture, the purpose of the jail calls is not clear although, as Salzano recognizes, prejudice can be minimized through sanitization and a limiting instruction.  Salzano Reply at 13.  Accordingly, the Court will grant, at this juncture, Salzano's motion to exclude the jail calls, subject to the Government's right to renew its application, accompanied by a proffer of the calls'

contents, a Rule 403 argument, and proper sanitization of the phone calls to remove all references to and identifiers of incarceration.[10]

### H.  Salzano MIL IV(G): the Court will not prohibit the Government from introducing summary charts into evidence, subject to certain limitations

Salzano asks the Court, pursuant to Rules 403 and 1006, to prohibit the Government from introducing summary charts into evidence.  Salzano MIL at 23.  As late as February 9, 2024, about a month before trial, Salzano had still not received the summary charts.  Salzano Reply at 15.  The Government responds that it intends to offer charts summarizing "voluminous banking . . . and accounting records" which has been made available to Salzano through discovery.  Gov't Opp'n at 40.

Rule 1006 currently permits admission of an exhibit summarizing "[t]he content of voluminous writings . . . that cannot be conveniently examined in court."  Fed. R. Evid. 1006; see also *United States v. Syme*, 276 F.3d 131, 151 (3d Cir. 2002) ("[Rule] 1006 recommends the value of presenting evidence to a jury in the form of a chart when doing so would increase the clarity of presentation.").  The underlying records must be admissible and available for inspection but need not be admitted.  *United States v. Rizk*, 660 F.3d 1125, 1130 (9th Cir. 2011); see also 3rd Circuit Model Jury Instructions § 4.11 (providing model instruction for summaries admitted under Rule 1006 where the underlying evidence was not admitted).[11]

"To have a summary admitted, the proponent of a summary must lay a proper foundation and show that the summation is accurate."  *United States v. Malik*, 424 F. App'x 122, 128 (3d Cir.

---

[10] The parties shall provide a limiting instruction to account for the possibility that the Court may ultimately permit the evidence.

[11] Salzano highlights an amendment to Rule 1006, effective December 2024, which also requires summaries to pass the Rule 403 balancing test.  The Court will, as with all evidence, utilize that standard.

2011). Rule 1006, however, is "not a back-door vehicle for the introduction of evidence which is otherwise inadmissible." *Eichorn v. AT&T Corp.*, 484 F.3d 644, 650 (3d Cir. 2007). Without having seen the charts, it is too early to determine that at this juncture. Accordingly, prior to any summary being presented to the jury, the Court must be satisfied that Salzano has had sufficient time to review the summary, and that it otherwise satisfies Rule 1006.

### I.      Salzano MIL V: the Court will not strike or redact Grabato from the Indictment

Salzano moves to preclude the Government from referring to Grabato as a "co-defendant" or referencing Grabato's fugitive status. Salzano MIL at 24-25. As the Government argues, this argument is moot because the Government "does not intend to reference Grabato's status as a co-defendant or fugitive (unless Salzano opens the door to the issue of Grabato's whereabouts or status)." Gov't Opp'n at 41.

Salzano similarly moves to redact portions of the Indictment referencing Grabato as a "codefendant or defendant." *See id.* Fed. R. Crim. P. 7(d) provides that, "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." However, "[s]urplusage should not be stricken unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Peters*, 435 F.3d 746, 753 (7th Cir. 2006). Here, Grabato's identity, role, and link to Salzano are "central to the case" and provide the jury with a "more complete picture." *United States v. O'Connor*, 656 F.3d 630, 645 (7th Cir. 2011).

Accordingly, they will not be stricken from the indictment. The Court will, however, provide a cautionary instruction to jurors that: (1) the indictment is not evidence of Salzano's

association with Grabato or sufficient by itself to prove knowing participation in the alleged scheme; (2) jurors should not speculate or infer anything about why Grabato, or any other individual mentioned in the indictment or at trial, is not currently on trial. *Id.*

## II.   GOVERNMENT MOTIONS IN LIMINE (D.E. 71)

### A.   Gov't MIL II: the Court will not exclude evidence and claims that victims of the alleged schemes were negligent or failed to conduct adequate due diligence, but will permit appropriate cross-examination

The Government seeks to bar Salzano from "arguing or eliciting evidence that NRIA investors were negligent, gullible, or insufficiently vigilant for investing in . . . or for failing to discover his fraudulent scheme." Gov't MIL at 28. Salzano responds that no fraud has yet been proven, and that he does not "intend to 'blame the victim,'" but "to inquire about issues that bear on a witness's credibility on cross-examination, including their due diligence, and the level at which they were informed of their investments, particularly by their own independent advisors." Salzano Opp'n at 13.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall,* 475 U.S. 673, 678 (1986). However, "trial judges retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, . . . confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *United States v. Shvartsman*, 317 F. App'x 68, 70 (2d Cir. 2009).

"The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct." *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995); *see also United States v. McHatton*, No. CR-18-02220, 2021 U.S. Dist. LEXIS 205279, at *4 (D. Ariz. Oct. 22, 2021) ("Evidence of the victims' status as 'sophisticated' or 'accredited' investors is not relevant to any element of the charged offenses, nor is it relevant to a defense based on lack of knowledge or intent to defraud."). "The susceptibility of the victim of the fraud . . . is irrelevant to the analysis. If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright." *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) (finding defense irrelevant when financial institution was the victim).

However, courts have repeatedly held that cross-examination of fraud victims is permitted for other purposes. *United States v. Lewis*, Nos. 1989 U.S. App. LEXIS 24377, at *18-19 (9th Cir. July 20, 1989) (In case involving fraudulent gem investment scheme, "there was no reason to restrict cross-examination of the investment experience of one of the victims of fraud . . . on relevancy grounds. The evidence would have tended to show that [the victim] was less likely to have reasonably relied on . . . misrepresentations."); *United States v. Coscia*, No. 14 CR 551, 2015 U.S. Dist. LEXIS 141584, at *3-4 (N.D. Ill. Oct. 19, 2015) (collecting cases permitting cross-examination of witnesses as to loss and schemer's intent). Accordingly, the Court will not categorically bar *all* cross-examination, subject to limitation where appropriate.

**B.    Gov't MIL III: the Court will not exclude evidence and claims that Salzano's misrepresentations were immaterial based on disclaimers in PPMs or other documents**

The Government seeks to bar arguments or cross-examination about disclaimers in PPMs or other documents provided to victims, as well as their status as accredited investors. Gov't MIL

at 30.  According to the Government, the securities at issue concern unlisted Regulation D securities, which were accompanied by "several pages of disclosures inviting potential investors to consider certain risks inherent in investing these types of securities."  *Id.*  The Government argues that the disclosures would be more prejudicial than probative because such arguments speak to the element of reliance, which is not an element of securities fraud or wire fraud, and would thus only confuse the jury."  *Id.*  Salzano responds that the evidence bears on the question of materiality: whether the evidence has the tendency to influence, or is capable of influencing, the decisionmaker (the investors).  *See* Salzano Opp'n at 14.

However, as the Government recognizes, materiality is a civil contract issue, not a criminal liability issue.  *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017).  The rule "embodies the key contractual "principle that where the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship."  *Id.*  But it has no bearing "where the government criminally prosecutes defendants for participating in a scheme or artifice to defraud[.] . . . Fraudsters may not escape criminal liability for lies told to induce gullible victims to make worthless investments by inducing them to sign a contract containing disclaimers of reliance.  *Id.*  Accordingly, Salzano will not be precluded from introducing this evidence.

### C.    Gov't MIL X: the Court will permit hypothetical questions related to victims' reliance on Salzano's alleged misrepresentations

The Government also seeks approval to examine certain of its witnesses through hypothetical questions, *i.e.*, questions aimed "the materiality of Salzano's alleged misrepresentations."  Gov't MIL at 48.  Salzano responds that such examination is disfavored.  Salzano Opp'n at 17.  The Court will permit such questioning.

Some courts have held that although the government need not prove victim reliance to make out a case of mail or wire fraud, such evidence does tend to show the existence of a scheme

to defraud and the deceptive nature of defendants' solicitations.  *United States v. Ranney*, 719 F.2d 1183, 1188 (1st Cir. 1983). Specifically, in a securities fraud prosecution concerning the materiality of a defendant's actions, hypothetical questions are "plainly relevant and probative" because "[t]he government would be hard pressed to prove this element without asking whether the undisclosed information would have affected the decision maker's analysis." *United States v. Hatfield*, 2010 U.S. Dist. LEXIS 57860, *5 (quoting *United States v. Jennings*, 487 F.3d 564, 582 (8th Cir. 2007)); *U.S. v. Ranney*, 719 F.2d 1183, 1189 (1st Cir. 1983) (district court was "eminently correct" in admitting hypothetical questions concerning materiality).

However, "whether or not a victim in fact relied upon a defendant's false representations is irrelevant in criminal fraud cases." *United States v. Ghilarducci*, 480 F.3d 542, 546 (7th Cir. 2007); *see United States v. Haischer*, No. 2:11-cr-00267, 2012 U.S. Dist. LEXIS 152701, at *8 (D. Nev. Oct. 24, 2012) (holding that the Government need not prove that the victim relied on the false statements or was damaged by them).  Here the Government seeks leave to elicit such evidence, in the form of hypothetical questions to victims, *i.e.*, whether investors would have invested if they had all of the information that Salzano allegedly omitted or misrepresented.  But simultaneously, the Government seeks to preclude Salzano from utilizing similar evidence reflecting investor's subject characteristics.  The Government cannot have it both ways.  Accordingly, the Court will not exclude evidence bearing on materiality or reliance, but also will permit the Government's appropriate hypothetical questions.

### D.    Gov't MIL IV: the Court Will Exclude Evidence and Claims That Salzano Intended to Repay Victims

The Government seeks to bar Salzano from offering evidence or arguing that Salzano intended to return or repay victims' funds, and therefore that he did not act with intent to defraud.  Gov't MIL at 31.  Indeed, "a defendant's good faith belief that the representations he made were,

33

in fact, truthful eliminates the specific intent to defraud required to sustain a mail or wire fraud conviction[, but] the well-intentioned belief that a business venture in which a defendant was involved would be successful and would allow for repayment of money taken from victims does not supply a basis for a defense that there was a good faith belief that a representation was true. *United States v. Okun*, No. 3:08-CR-132, 2009 U.S. Dist. LEXIS 12419, at *9 (E.D. Va. Feb. 18, 2009); *see also United States v. Lucas*, 709 F. App'x 119, 123 (3d Cir. 2017) (citing similar holdings in other circuits). Sand, *Modern Federal Jury Instructions*, ¶ 57-24 (2006) ("[A] belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith. No amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investors will excuse fraudulent actions or false representations by him to obtain money.").

Salzano responds only that it is too early to preclude such evidence because the Government has not yet proven fraud.  While Salzano is technically correct that the Government has not yet met its burden, it does not automatically follow that the Court cannot preclude certain evidence that *may* follow the Government having demonstrated fraud.  And more importantly, Salzano has failed to *substantively* oppose the Government's argument, or otherwise demonstrate the admissibility of an argument or defense that an intent to repay vitiates an intend to defraud. Accordingly, the Court will exclude testimony that Salzano "acted in good faith because he honestly believed that NRIA's real estate investments would eventually turn a profit to the benefit of investors."  Gov't MIL at 33.

E.     **Gov't MIL V: the Court Will Permit An Advice-of-Counsel Defense Upon Compliance with the February 15, 2024 order (D.E. 79)**

The Court ruled on this motion on February 15, 2024, directing Salzano to indicate whether he intends to use an advice-of-counsel defense by February 20, 2024 and, if so, to promptly provide

discovery.  D.E. 79.  Upon compliance, Salzano is entitled to utilize the defense, subject to the discussion below regarding the Government's supplemental motion.

###### F.      Other Unopposed Motions

The Government also moves to permit an IRS Revenue Agent, intended to be called as a summary witness, to remain in the courtroom for other testimony, Gov't MIL at 23; to bar testimony and arguments that Salzano should not have been charged or regarding civil statutes of limitations, *id.* at 42; to permit "statements by NRIA employees" "for their truth," *id.* at 45, and to bar evidence regarding Salzano's family background, age, health, and other factors unrelated to guilt or innocence including punishment, *id.* at 46-47.

Salzano does not oppose, subject to the qualifications that any summary charts are provided in advance (to which the Government agrees), Salzano Opp'n at 19, Gov't Reply at 15; and that the Government identities NRIA employees and establishes their roles at NRIA (which the Government agrees to do at trial), Salzano Opp'n at 19, Govt' Reply at 16.  Accordingly, the Court deems these MILs moot.

### III.      SUPPLEMENTAL GOVERNMENT MOTIONS IN LIMINE

#### A.      The Court Will Not Preclude David Gannaway From Testifying That NorVergence Had No Employees Following Its Bankruptcy

The Government moves, pursuant to Fed. R. Evid. 602, to bar testimony by Salzano fact and expert witness David Gannaway that, "[a]s of July 1, 2004, NorVergence was closed/out of business and all employees were fired.  Therefore, no employment taxes were due to the IRS from this point forward."  Gov't Supp. MIL at 1, Ex. A ("Salzano Exp. Discl.").  Salzano concedes that Gannaway "does not appear to have any personal knowledge of NorVergence's operating status or the status of its employees in 2004," but persuasively highlights that "neither do any of the

Government agents or witnesses who may testify about Norvergence's role[.]"  Salzano Supp. Opp'n at 4.

As Salzano argues, a defendant on trial for tax evasion "must have the opportunity to prove, however unlikely the proposition may be, that an administratively final tax assessment does not accurately reflect the existence of a tax deficiency."  *United States v. Silkman*, 156 F.3d 833, 836 (8th Cir. 1998); *see also United States v. Farnsworth*, 456 F.3d 394, 401-02 (3d Cir. 2006) ("Essential to conviction under 26 U.S.C. § 7201 is 1) *the existence of a tax deficiency*, 2) an affirmative act constituting an attempt to evade or defeat payment of the tax, and 3) willfulness.") (emphasis added).  Indeed, the Government's experts will likely testify in a similar fashion about their conclusions drawn from record.  *See* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.").  Thus, experts may thus be used by both Salzano and the Government to attempt to prove, or disprove, the tax obligation underlying the charges.

### B. Tom Carocci Will Be Permitted to Testify Twice in the Government's Case-in-Chief and to Remain in the Courtroom During Others' Testimony

The Government moves to permit Mr. Carocci to be called twice as a witness at trial in the Government's case in chief and to be present in the Courtroom during the testimony of others. Gov't Supp. MIL at 3.  Salzano consents, and the Government reciprocally consents to Salzano's experts' presence during the trial.  Accordingly, the Court will grant this motion and permit all experts to be present in the courtroom during others' testimony.

### C. The Court directs the parties to adhere to Rule 613, but will otherwise defer any specific evidentiary ruling at this time

The Government asks the Court to preclude Salzano "from suggesting to the jury on cross-examination that a witness made potentially contradictory statements attributed to him or her in a

report of the witness's earlier interview."  Gov't Supp. MIL at 5.  The Government provides as a reference "Guidelines Regarding Appropriate Use of 302 Forms in Criminal Trials by the Hon. Katherine B. Forrest, District Court Judge, Southern District of New York.  Salzano "is familiar with the operation of Rule 613 and the use of investigative reports in the cross-examination of witnesses."  Salzano Supp. Opp'n at 6.

Rule 613(a) permits a party to examine "a witness about the witness's prior statement"; Rule 613(b) permits a party to introduce "[e]xtrinsic evidence of" such a statement, but "only if the witness is given an opportunity to explain or deny the statement." Fed. R. Evid. 613(a), (b) (emphasis added).  The Court defers any explicit Rule 613 determination at this time, noting that Rule 613(a) was not "intended to take away the district judge's discretion to manage the trial in a way designed to promote accuracy and fairness."  *United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir. 1987).

### D. The Court Denies as Premature the Government's Motion Regarding Self-Serving Hearsay Evidence

The Government challenges "hundreds of emails" on Salzano's exhibit list as "out-of-court statements offered by the defense [which] amount to nothing more than inadmissible self-serving hearsay."  Gov't Supp. MIL at 5.  The Court agrees with Salzano that the motion must be denied as premature because the Government "offers no specific example of an objectionable exhibit in this regard."

### E. Salzano Has Waived Marital Privilege, and the Court Will Make the Appropriate Record

Salzano's wife, Olena Budinska, may testify at trial. The Government argues that marital privilege does not apply, but notes that Salzano has waived the privilege regardless.  Gov't Supp. MIL at 6.  The Government seeks a colloquy on the record.

37

Salzano "reserves the right to object on any other basis to Ms. Budinska's testimony, including Rule 403, as the Government has forecast an intent to offer evidence relating to attention-grabbing but irrelevant issues of intimacy and infidelity, among others," but acknowledges waiving the privilege. Salzano Supp. Opp'n at 6. Salzano "will make a record on this issue when the Court instructs him to do so." *Id.* Accordingly, the Court will conduct a colloquy regarding Salzano's waiver.

**F.     The Court Will Not Preclude Salzano's Advice-of-Counsel Defense, Will Not Direct Salzano to Confirm Whether He Will Call Messrs. Von Paar and/or Harris, But Will Direct Salzano to Produce Any Related Documents as Soon as Practicable**

On February 20, 2024, the Court directed Salzano to confirm whether he intends to invoke the advice-of-counsel defense, and to simultaneously produce to the Government all documents concerning the intended advice-of-counsel defense, including any documents that might impeach or undermine the defense. D.E. 79. In a February 20, 2024, letter, Gov't Supp. MIL, Ex. D, Salzano indicated an intent to invoke the advice-of-counsel defense for attorneys and/or firms associated with Erik Weingold, Jeffrey Harris, and Max Riederer von Paar, Esqs.

Salzano did not produce any documents at that time, but indicated an intent to produce them as soon as he received them. Salzano indicated "that it is unlikely that Salzano will call Mr. Harris and Mr. von Parr at trial, but left open the possibility that these witnesses would be called." Gov't Supp. MIL at 7. The Government seeks to preclude the advice-of-counsel defense with respect to Mr. Weingold, arguing that a deposition transcript reveals that Salzano did not disclose to Weingold that Salzano was involved in a "prior fraud called NorVergence" or that Salzano was a "convicted felon in 2013," *i.e.*, that Weingold could not have given complete advice without complete information. Gov't Supp. MIL at 8, citing *United States v. Traitz*, 871 F.2d 368, 382 (3d

38

Cir. 1989) ("It must be remembered that the advice of counsel defense is meant to be available only to those who, *after full and honest disclosure of the material facts* surrounding a possible course of action, seek and obtain the advice of counsel on the potential legality of their actions.") (emphasis in brief).

As Salzano argues, there is an issue of fact as to the underlying questions regarding NorVergence and the Louisiana convictions. Accordingly, the Court will not preclude the defense at this time.[12]

The Government also asks the Court to direct Salzano to confirm whether he intends to call Messrs. von Paar and Harris; and if calling them, for the immediate production of related documents. The Court will not, at this time, direct Salzano to state conclusively whether he intends to call those witnesses. It is sufficient, at this juncture, that they have been identified, and that Salzano indicates that he will provide all material as soon as they are available.

## IV.   ADDITIONAL MOTIONS

To the extent that the parties seek leave to file any other MILs, they may file them only with leave of Court, and any such motions shall be limited to no more than three pages per issue.

February 26, 2024

Evelyn Padin, U.S.D.J.

---

[12] As the Court noted previously, however, the advice-of-counsel defense is a more specific form of the defense of good faith, available in limited circumstances in which a good faith instruction may otherwise be applicable. *See, e.g.*, *United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019); see also Sand, *Modern Federal Jury Instructions*, ¶ 8-04. The advice-of-counsel issue does not arise unless there are enough facts in the record to support the defense's prerequisites. *Greenspan*, 923 F.3d at 146 (3d Cir. 2019). Here, Salzano has attached the nearly 300-page transcript of Mr. Weingold's deposition, perhaps to demonstrate that the Government's brief excerpt lacks context. However, Salzano's attachment of the entire transcript likewise provides insufficient context; should Salzano wish to submit the advice-of-counsel argument to the jury, more will be needed. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")